Felix A. Landrau **ROMERO**, Plaintiff,

v.

**BANCO POPULAR DE PUERTO RICO**, Defendant.

No. Civ. 96–1470(PG).

United States District Court,
D. Puerto Rico.

Feb. 12, 1999.

Luis R. Mellado, Arterial Hostos, San Juan, PR, for plaintiff.

Pedro J. Manzano–Yates, San Juan, PR, for defendant.

### *OPINION & ORDER*

PEREZ–GIMENEZ, District Judge.

On April 16, 1996, plaintiff Félix A. Landrau Romero (hereinafter referred to as "Landrau") filed an employment discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* as amended in 1972, against defendant Banco Popular de Puerto Rico (hereinafter referred to as "Banco Popular") alleging that his resignation from the bank was in essence the consequence of a constructive discharge against him because of his race and/or color

of skin.[1] Pending before this Court are defendant's motion for summary judgment (Dkt.# 21) and plaintiff's opposition to said motion (Dkt.# 27).

## Factual Background

Landrau, a black citizen of the United States and a resident of the Commonwealth of Puerto Rico, was employed since 1981 by Banco Popular, a legal entity organized and existing as a commercial bank under the laws of the Commonwealth of Puerto Rico. While at Banco Popular, Landrau occupied the position of Clerk II in the Collection Department until September 1, 1988, when he was transferred to the Insurance Division where he remained until he ceased working with Banco Popular.

On April 1, 1993, Ms. Carmen Sandín, Landrau's boss, retired from her position as supervisor of the Mortgage Insurance Services and said position became vacant. Several employees of Banco Popular, including Landrau, applied for the position previously held by Ms. Carmen Sandín (hereinafter referred to as "Sandín"). Eventually Mr. Jaime Bou (hereinafter referred to as "Bou"), who is white, was selected to the position that Landrau had applied to.

On February 15, 1995, Landrau submitted a first letter of resignation. (Dkt.# 27, Ex. 20). The letter stated that he was resigning because he had another job opportunity and thanked Banco Popular for having allowed him to work for said "distinguished banking institution." However, on the date that Landrau's resignation was to become effective, February 28, 1995, he submitted a second letter which stated that he had resigned because of discriminatory treatment. (Dkt.# 27, Ex. 21). Eventually, the present action was filed seeking, among other things, Landrau's installment in the denied position and backpay for the alleged racial discrimination that he suffered.

## The Standard for Summary Judgment

Summary judgment is "a means of avoiding full-dress trials in unwinnable cases, thereby freeing courts to utilize scarce judicial resources in more beneficial ways."

*Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), *cert. denied,* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586. In essence, summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Therefore, the trial court must go beyond the façade of the pleadings, and "assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir.1992), *cert. denied,* 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470. Throughout the court's analysis, "the entire record [must be seen] in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). *See also Mullin v. Raytheon Co.,* 164 F.3d 696, 697 (1st Cir.1999).

## Discussion

Title VII is the main pillar of federal legislation targeted toward discrimination in the arena of employers, labor organizations and employment agencies throughout their hiring, compensation, promotion, working conditions and discharge practices. Rodney A. Smolla, *Federal Civil Rights Acts,* § 9.01 (3rd ed.). In essence, Title VII establishes that "similarly situated employees are not to be treated differently solely because they differ with respect to race, color, religion, sex or national origin. This is true regardless of whether the discrimination is directed against majorities or minorities." *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 71–72, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977) (citations omitted).

Title VII is applicable only to an "employer", which "means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person...." 42 U.S.C. § 2000e(b). At all relevant times, Banco

---

1. The complaint was amended on May 23, 1996 (Dkt.# 2), and again on December 11, 1997, in the latter case to drop the age discrimination claim. (Dkt.è31–32).

Popular was Landrau's employer within the meaning of Title VII.

The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

The burden-shifting dance takes place as follows: "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, non-discriminatory reason for the employee's rejection.'" *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citation omitted). The weight on the defendant's shoulders once the burden shifts, however, is lightened by the fact that regardless of whether the reasons provided by the defendant for the disqualification of the job applicant are persuasive or not, the presumption of intentional discrimination is rebutted by any evidence of nondiscriminatory intent offered by the defendant. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Still, the defendant's proffered explanation "must be le-

gally sufficient to justify a judgment for the defendant." *Burdine, supra,* at 255, 101 S.Ct. 1089. If the defendant meets this burden, "the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253, 101 S.Ct. 1089.[2]

Counsel for the defendant has conceded that Landrau has established the first, second, and fourth prongs of the prima-facie elements outlined in *McDonnell Douglas.* Banco Popular, however, vehemently contends that Landrau was neither actually nor constructively discharged. It is clear, though, that despite his qualifications, Landrau was denied the position of supervisor of the Mortgage Insurance Services. Therefore, the third prong of the prima facie case has been satisfied as well; Landrau has swiftly made the first step of the burden-shifting dance.

The second step belongs to the defendant, namely the specific, non-discriminatory reasons for rejecting Landrau's application to the position previously held by Sandín. Banco Popular evaluated five variables with regard to each candidate: (1) formal education, (2) general experience and technical knowledge relevant to the position, (3) experience in supervision, (4) motivation and interest for the position, (5) initiative and potential supervisory capacity. (Dkt.# 27, Ex. J). With the exception of formal education, in each and every one of the variables considered, Bou obtained higher evaluation results than Landrau. *Id.* Although Sandín's position required a minimum of 60 college credits and there is some doubt as to whether Bou had

---

**2.** A prerequisite to filing a Title VII suit is the filing of a discrimination charge with the Equal Employment Opportunity Commission. The charge must be filed within 180 days of the alleged unlawful employment practice, or within 300 days in the case of a deferral state. 42 U.S.C. § 2000e–5(e). Banco Popular claims that Landrau did not file a charge of discrimination with the Antidiscrimination Unit of Puerto Rico's Department of Labor until almost two years after the designation of Bou to Sandín's vacant position, and thus failed to comply with Title VII's administrative requirements. True, Landrau filed his charge of discrimination on February

28, 1995 while the position was denied to him since April 1, 1993 (Complaint ¶ 16D); yet on January 16, 1996 a notice of right to sue was issued by the EEOC to Landrau. "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Since there is no evidence suggesting waiver, estoppel, or equitable tolling, summary judgment could be granted to defendant Banco Popular on this basis alone.

the education necessary to fill her vacancy, Banco Popular seems to have a policy in which more flexible academic standards are applied to internal employees than to external applicants.[3] (Dkt. # 27, Ex. Y, Jeannette Ibern Caraballo, Dep., lines 2–18). This evidence, by itself, is enough to shift the burden back to the plaintiff who then has to show that the defendant's reasons for granting the position to Bou rather than Landrau are merely a pretext to hide the discriminatory intent displayed by the bank's officials. However, there is more evidence indicating that Landrau did not suffer discrimination on account of his race while working for the Mortgage Insurance Services Division of the bank.

Only two written warnings, March 29, 1994 and June 30, 1994 were issued to Landrau, and no written warnings were given to him between June 30, 1994 and February 15, 1995, the day of his resignation. (Dkt. # 21, Ex. IV, Landrau, Dep., p. 23, lines 13–25).[4] Only one verbal warning between June 30, 1994 and February 15, 1995 occurred, prompted by the following situation: Landrau took a brief break during his workday because he was hungry. Bou, his old competitor for Sandín's position and now his new supervisor, said that Landrau could not "just leave", as if implying that Landrau had first to request permission from him. Landrau brought two colleagues as "witnesses" into Bou's office, Millie Cintrón and Rafael Linero, to prove that he had notified his whereabouts prior to leaving the office. Bou's lackadaisical response after listening to Millie Cintrón and Rafael Linero's corroboration of Landrau's version of the facts was simply to remain silent. (Dkt. # 21, Ex. IV, Landrau, Dep., p. 24 line 13 through p. 26 line 22). Nevertheless, these three incidents—two of which were not close to Landrau's first letter of resignation—do not constitute enough evidence to support a finding of continuous harassment, unreasonably tight supervision, or imposition of a hostile working environment between 1988 and 1995. It is true that Landrau had good relations with all his supervisors prior to Bou[5], and that the warnings against him were issued once Bou became his supervisor, but there is no evidence (besides Landrau's own statements, e.g., his second resignation letter (Dkt.# 21, Ex. III)) to support that the motivation behind these warnings was discriminatory on account of the plaintiff's race.

Prior to February 15, 1995, Landrau's salary was never reduced. (Dkt. # 21, Ex. IV, Landrau Dep., p. 23, lines 10–12). From 1988 to 1995, his responsibilities were never diminished either. (Dkt. # 21, Ex. IV, Landrau, Dep., p. 27, lines 6–25, p. 28 lines 1–23). The physical conditions of his working space (e.g., ventilation, illumination, etc.) remained the same. (Dkt. # 21, Ex. IV, Landrau, Dep., p. 29, lines 11–15). Moreover, there is documentation suggesting that the other positions within the bank for which Landrau applied required qualifications above the level that he possessed. (Dkt. # 27, Ex. I, p. 75, Letter November 16, 1994). Thus, all of the evidence described above makes Landrau's claim of constructive dismissal impossible to find shelter in any rational juror's mind.

The burden having shifted back to the plaintiff's side, the third step of the analysis proceeds: The defendant's motion for summary judgment can be granted only if the plaintiff has failed to submit sufficient evidence for a rational jury to find that it is more likely than not that Banco Popular's real motivation for rejecting Landrau's application for the position previously held by Sandín was discriminatory on the basis of his race. In other words, summary judgment must be denied if a rational mind could find

---

3. Landrau and Bou were both internal applicants. Thus, even if it is true that Bou did not quite meet the academic standards as well as Landrau, it is possible that the Human Resources Division of the bank may have applied some degree of flexibility with Bou's educational credentials, making the decision of selecting him to replace Sandín consonant with the policies of Banco Popular.

4. One of these written warnings was issued because apparently Landrau was writing the wrong year in several documents, causing duplicate payments.

5. In fact, in 1989 Landrau received a recognition of merit for his outstanding performance from Mr. Richard L. Carrión, President of Banco Popular (Dkt.# 27, Ex. A).

that Banco Popular's reasons for having granted Sandín's position to Bou, rather than Landrau, are a pretext to cover up discriminatory motivations.

One of the pieces of evidence in support of Landrau's case comes from Sandín herself, Landrau's ex-supervisor:

> At no time I was consulted by anyone from the Human Resouces [sic] Department on his fitness and qualifications. Not even at the time that my position was to be vacant as a result of my retirement, no one consulted me on Mr. Landrau Romero's skills and qualifications for the position of Insurance Unit Supervisor, nor on the experience gained by him on supervision, notwithstanding the fact that I was the best source of information at that time about his performance.... No one has ever explicitly told me about it, but I have always had the impression that black candidates like Mr. Landrau were not welcome [sic] by the top management of the bank for trainee positions in management nor for supervisory positions, as may be the case in other banks and commercial institutions in Puerto Rico.

Sworn Statement of Carmen B. Sandín Maeso (Dkt.# 15, App., p. 2–3). Furthermore, another retired bank official and ex-supervisor of Bou, Angel Rivera Colón, had a similar view to Sandín's:

> I had my reservations that [Landrau] would not be selected just for been [sic] black, considering that a white applicant, Mr. Jaime Bou, had already applied for the position. In fact, during my 29 years of experience in the bank it was an unwritten law that somehow was conveyed to us officials, that if there was a white applicant and a black applicant for the same position, the white applicant would get the position, and that was accepted as an implied rule, although nobody dared to publicly talk about it or openly admitting it. Also it was well known to me that blacks were not welcomed for management positions, although nobody told me so explicitly.

Sworn Statement of Angel Rivera Colón (Dkt., App., # 15, p. 2–3).

The fact that the Human Resources Division of the bank did not even consult Sandín

for her replacement certainly speaks poorly of the management-selection process at Banco Popular, but it does not establish discriminatory intent. Commercial entities are free to choose those policies that they deem suitable to promote the candidates that are best qualified for supervisory positions as long as those policies do not engage in discriminatory practices as defined by Title VII.

Sandín's and Rivera Colón's impression that there may be an implicit or indirect pressure within Banco Popular to select only white candidates to managerial positions ought to concern said institution's top management, but again, fails to establish that the bank discriminated against Landrau in particular during his tenure at the Mortgage Insurance Services department and during the evaluation of his application to occupy Sandín's position upon her retirement. General charges of discrimination are not sufficient because they do not create a "case or controversy" for this Court to address. In order to have standing before this Court, Landrau must provide evidence of discrimination against him, not against others in the bank.

> An inquiry into standing generally seeks to determine "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *United States v. AVX Corp.*, 962 F.2d 108 (1st Cir.1992). The plaintiff must allege a personal stake in the outcome of the controversy in order to warrant judicial review and justify the court's use of its remedial powers. *Warth*, 422 U.S. at 498, 95 S.Ct. 2197. The injury alleged must be distinct and palpable, and not abstract or hypothetical. *Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). "A mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury." *AVX Corp.*, 962 F.2d at 114.

*Massachusetts Ass'n of Afro–American Police, Inc. v. Boston Police Dep't*, 973 F.2d 18, 21 (1st Cir.1992) (appeal of an amended consent decree involving racial discrimination in

employment and promotion not ripe for judicial review).

### Conclusion

When the non-moving party in a summary judgment contest has the burden of proof at trial, it may not rest upon mere "conclusory allegations, improbable inferences, ... unsupported speculations" or denials in its pleading. *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993). Instead, it must set forth specific facts which arise from definite and competent evidence to establish the existence of a genuine issue for trial. *Sheinkopf v. Stone,* 927 F.2d 1259, 1262 (1st Cir.1991) (citations omitted). Even if we assume all of the evidence submitted by Landrau (his own self-serving statements aside, of course) to be true, no rational jury would be able to find by the preponderance of the evidence that Banco Popular discriminated against him and that its reasons for not having offered Sandín's position to Landrau are a mere pretext. It takes three steps to waltz into court, and the plaintiff has missed the third one.

**WHEREFORE,** for the reasons mentioned above, the Court hereby **GRANTS** defendant's motion for summary judgment.

**IT IS SO ORDERED.**