# United States Court of Appeals
## For the First Circuit

No. 99-1708

FELIX A. LANDRAU-ROMERO,

Plaintiff, Appellant,

v.

BANCO POPULAR DE PUERTO RICO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Perez-Gimenez, U.S. District Judge]

Before

Selya, Circuit Judge,

Campbell, Senior Circuit Judge,

and Stahl, Circuit Judge.

Luis R. Mellado Gonzalez on brief for appellant.
Pedro J. Manzano-Yates with whom Fiddler Gonzalez & Rodriguez, LLP was on brief for appellee.

April 6, 2000

**CAMPBELL, Senior Circuit Judge.** Plaintiff-appellant Felix Landrau-Romero ("Landrau") appeals from the district court's entry of summary judgment in favor of Landrau's employer, defendant-appellee Banco Popular. We affirm in part and vacate in part, and remand for further proceedings not inconsistent with this opinion.

I.      BACKGROUND

We set forth the relevant facts in the light most favorable to the appellant. See New York State Dairy Foods, Inc. v. Northeast Dairy Compact Comm'n, 198 F.3d 1, 3 (1st Cir. 1999). Landrau, a black man, was employed by Banco Popular from 1981 until his resignation in 1995. He began as a clerk in the collection department, and was transferred in 1988 to the insurance unit of the mortgage department for the remainder of his employment.

On April 1, 1993, Landrau's supervisor, Carmen Sandín, retired from her position as supervisor of the mortgage insurance services. Several Banco Popular employees applied for the vacant position, including Landrau. In April, 1993, a white man, Jaime Bou, was selected and became Landrau's supervisor.

Bou subjected Landrau's work to closer scrutiny than that of the other employees in the unit, and closely monitored Landrau's whereabouts. This monitoring included forcing Landrau

to leave a note on his desk every time he went on break, to the bathroom, or to get a drink of water. At one point after June 30, 1994, Bou verbally admonished Landrau for taking a break without providing notification of his whereabouts ("the break incident"). When Landrau brought co-workers to explain to Bou that Landrau had in fact informed them of his whereabouts, Bou "said nothing."

Bou criticized and "yelled" at Landrau more frequently than other employees, sometimes in front of Landrau's coworkers. Moreover, after Landrau suffered an injury at work and returned from disability leave on December 29, 1993, Bou assigned him physically strenuous tasks in disregard of an accommodation ordered by the State Insurance Fund. This disregard of Landrau's disability continued through June or July, 1994.

In March or April, 1994, Landrau received a written reprimand for misidentifying the date on certain paperwork, which caused duplicate payments to be made. On June 30, 1994, Bou gave Landrau another reprimand for continuing to repeat these mistakes. Landrau's performance evaluations, which had been excellent under his previous supervisors, declined. Landrau contends that the errors were due to the bank's failure to provide him with adequate computer training, which his coworkers received.

-4-

Landrau alleges other harassment, including Bou's attempt to "frame" him in June, 1994, by using Landrau's computer to commit errors for which Landrau was blamed. Bou and other supervisors made jokes and comments about his race, including remarking upon his "kinky hair." One of the supervisors also complained in writing about Landrau's meeting with other Banco Popular employees to discuss filing a race discrimination complaint.

In an attempt to remove himself from these circumstances, Landrau submitted applications for other positions within Banco Popular, but was not hired.[1] Landrau complained to Banco Popular about the alleged harassment and racial discrimination. In a letter dated March 7, 1994, Landrau stated that he had been unfairly subjected to reprimands after Bou replaced Sandín, and that "work became hell." On June 14, 1994, Landrau wrote a letter to general manager Felipe Franco alleging that Bou was mistreating him due to race discrimination; on August 26 of that year, Landrau wrote another letter to Franco complaining that he had been turned down for

---

[1]As to at least two of those positions, Landrau admitted that he was not hired because he lacked the necessary experience and training. He does not contend that he was denied any of these positions due to racial discrimination.

Sandín's position and that his performance evaluations had fallen since Bou became his supervisor.

Banco Popular investigated the allegations, and, in a report dated November 3, 1994, concluded that Landau's problems were not caused by discrimination. Landrau's job duties, pay, and physical working environment did not change while Bou was his supervisor.

On February 15, 1995, Landrau submitted a letter of resignation stating that he was leaving Banco Popular because he had another job opportunity. On February 28, 1995, the day that resignation was to be effective, he submitted another letter, this time stating that the true reason for his resignation was discrimination.

Landrau filed charges of discrimination with the Anti-Discrimination Unit of Puerto Rico's Labor Department and the Equal Employment Opportunity Commission (EEOC) on or about March 9, 1995.[2] The EEOC issued him a "right-to-sue" letter on January 16, 1996. On April 16, 1996, Landrau filed employment discrimination claims against Banco Popular in the District Court for the District of Puerto Rico pursuant to Title VII of

----

[2]March 9, 1995, is the date on the Department of Labor discrimination charge form contained in the record, although Landrau's complaint and the district court's opinion state that the charge was filed on February 28, 1995. This discrepancy is not material.

the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. and Puerto Rico's anti-discrimination statute, Law 100, P.R. Laws Ann. 29, § 146 et seq.[3] He appears to have alleged three adverse employment actions on the basis of his race and color: (1) that Banco Popular failed to promote him to Sandín's position; (2) that he was subjected to harassment after Bou became his supervisor; and (3) that the harassment became so intolerable that it resulted in his constructive termination.

On August 11, 1997, Banco Popular moved for summary judgment on the grounds that (1) Landrau could not adduce sufficient evidence to support his constructive discharge claim; and (2) Landrau's failure-to-promote claim was time-barred because he did not file a charge of discrimination within the 300-day time limit set forth in Title VII. Landrau opposed the summary judgment motion, contending that his working conditions amounted to actionable harassment and constructive discharge, and that Banco Popular's failure to promote him was discriminatory. Landrau did not, however, explicitly counter defendants' time bar argument or address the state law claims.

In support of his opposition to Banco Popular's summary judgment motion, Landrau submitted, inter alia, affidavits by

---

[3]The complaint originally alleged age discrimination as well as race discrimination; the age claim was later dropped.

Sandín and another former supervisor that discussed a general climate of racial discrimination at Banco Popular. Specifically, Sandín stated in her affidavit that she "always had the impression that black candidates like Mr. Landrau were not welcome [sic] by the top management of Banco Popular for trainee positions in management nor for supervisory positions." The other former Banco Popular supervisor, Angel Rivera Colon, stated:

> I had my reservations that [Landrau] would not be selected just for been [sic] black, considering that a white applicant, Mr. Jaime Bou, had already applied for the position. In fact, during my 29 years of experience in Banco Popular it was an unwritten law that somehow was conveyed to us officials, that if there was a white applicant and a black applicant for the same position, the white applicant would get the position, and that was accepted as an implied rule, although nobody dared to publicly talk about it or openly admitting [sic] it. Also it was well known to me that blacks were not welcomed for management positions, although nobody told me so explicitly.

The district court allowed Banco Popular's motion for summary judgment on February 23, 1999. See Romero v. Banco Popular de Puerto Rico, 35 F. Supp. 2d 195 (D.P.R. 1999). The court stated in a footnote that Landrau's failure to file a timely charge of discrimination with the EEOC provided a basis for awarding summary judgment to Banco Popular, but went on to address the merits of Landrau's claims. The district court

-8-

determined that Landrau had established a prima facie case of discrimination based upon the fact that Bou had been hired to fill Sandín's position. Landrau failed to rebut Banco Popular's nondiscriminatory explanation for the selection of Bou, however, with sufficient evidence of discrimination.[4] The district court stated that the affidavits offered by Sandín and Rivera did not sufficiently establish discriminatory intent. It also concluded that Landrau did not adduce sufficient evidence of race-based harassment or constructive discharge.

On March 9, 1999, Landrau filed a motion to set aside the opinion and order and for reconsideration pursuant to Fed. R. Civ. P. 59(e). For the first time, Landrau asserted that the time period for filing his charge of discrimination should be tolled due to operation of the discovery rule and the "continuing violation" doctrine. The district court denied the motion on March 29, 1999. Landrau appeals.

---

[4]The district court appeared to confuse or conflate the different adverse employment actions in applying the burden-shifting analysis. For example, it stated that Landrau established a prima facie case of racial discrimination because Bou was hired instead of him, but pointed to Landrau's failure to adduce evidence of harassment or constructive discharge in concluding that Landrau did not rebut Banco Popular's explanation that Bou was the more qualified applicant. Because the alleged adverse employment actions are factually distinct, we analyze them separately on appeal. See Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996).

## II.  **DISCUSSION**

This Court reviews orders for summary judgment de novo, construing the record in the light most favorable to the nonmovant and resolving all reasonable inferences in that party's favor.  See Houlton Citizens' Coalition v. Town of Houlton, 175 F.3d 178, 184 (1st Cir. 1999).  This standard of review does not limit us to

the district court's rationale; we may affirm the entry of summary judgment on "any ground revealed by the record."  Id.

### A.  Failure to promote

The district court correctly determined that Landrau's failure to promote claim was time-barred.  42 U.S.C. § 2000e-5(e) provides that a charge shall be filed with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred," or within 300 days after the unlawful practice if "the person aggrieved has initially instituted proceedings with [an authorized] State or local agency."  The longer period is available only in so-called "deferral" jurisdictions, including Puerto Rico.  See Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 278 & n.4 (1st Cir. 1999).

Assuming that the longer period applied, Landrau had 300 days after the alleged adverse employment action to file his

charge with the EEOC.  For purposes of his failure to promote claim, the clock began to run no later than April, 1993, when Bou filled the position Landrau had sought, necessarily notifying Landrau that Bou had been selected instead of him. Landrau did not file his charge of discrimination until March 9, 1995, nearly two years later.  He thus failed to comply with the 300-day limitation period.  "This omission, if unexcused, bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of suit."  Id. at 278.

Landrau contends on appeal that the doctrines of notice and "continuing violation" equitably tolled the limitation period.  He argues that he was unaware that defendant's actions were motivated by racial discrimination until July 14, 1994, and that all of the adverse actions were part of a continuous pattern of harassment and discrimination.  Hence, he contends, his failure to timely file his charge of discrimination was excused.

Landrau failed to make this argument, however, in his opposition to Banco Popular's motion for summary judgment.[5]

_____

[5]Although Landrau's opposition to the motion for summary judgment made passing mention of "continuous" harassment, he did not explicitly assert a tolling argument in his accompanying brief.  To the extent that he discussed a "pattern" of treatment, it was in the context of harassment and constructive

Therefore, he has waived it. See Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1311 (10th Cir. 1999) (refusing to consider continuing violation theory that was not adequately presented in district court); see also Rivera-Muriente v. Agosto-Alicea, 959 F.2d 349, 354 (1st Cir. 1992).

To be sure, Landrau asserted a tolling argument in his motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). It is well-settled, however, that new legal arguments or evidence may not be presented via Rule 59(e); rather, motions under that rule must either clearly establish a manifest error of law or present newly discovered evidence. See Federal Deposit Ins. Corp. v. World Univ., Inc., 978 F.2d 10, 16 (1st Cir. 1992). As Landrau's tolling argument was available to him before judgment was entered, he could not raise it under Rule 59(e), and we are not obliged to consider it now. See id.

In any event, Landrau's tolling argument lacks merit. No continuing violation can be found where the plaintiff was aware of the alleged discrimination outside of the time for filing a charge:

> Even where a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the

---

discharge, not tolling of the limitations period for his discrimination charge. Nor does Landrau argue on appeal that he had timely raised this argument below.

-12-

> plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place.

Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3d 5, 14 (1st Cir. 1998).  The record contains a handwritten note by Landrau dated March 9, 1994, stating, "we, who are black, were denied the position and [it] was given to the only white that applied for it, Mr. Jaime Bou."  Thus, Landrau apparently was aware of the alleged discrimination with regard to Bou's hiring approximately a full year before he filed his charge of discrimination with the EEOC.  Accordingly, neither the doctrine of notice nor of continuing violation could resuscitate his failure to promote claim.  See id.

As Landrau's failure to promote claim was time-barred, we need go no further with respect to that claim.

B.     Constructive discharge

Landrau contends that the district court erred in concluding that there was insufficient evidence to support his claim of constructive discharge under Title VII.  In an employment discrimination case alleging termination, the plaintiff first must establish a prima facie case, i.e., that he (1) was within a protected class; (2) met the employer's legitimate performance expectations; (3) was actually or constructively discharged; and (4) was replaced by another with

-13-

similar skills and qualifications.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993).

Alleging constructive discharge presents a "special wrinkle" that amounts to an additional prima facie element. Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 719 (1st Cir. 1994).  In such cases, the plaintiff must prove that his employer imposed "'working conditions so intolerable [] that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities.'"  Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 46 (1st Cir. 1999) (quoting Vega v. Kodak Caribbean, Ltd., 3 F.3d 476, 480 (1st Cir. 1993)) (alteration in original); see also Sanchez, 37 F.3d at 719.

Here, the district court concluded that Landrau did not adduce sufficient evidence to support a constructive discharge claim, noting that the alleged events did not occur close in time to Landrau's termination.  We think that Landrau's resignation came too late after the offensive conduct to be labeled a constructive discharge.  See Smith v. Bath Iron Works Corp., 943 F.2d 164, 167 (1st Cir. 1991).  If a plaintiff does not resign within a reasonable time period after the alleged harassment, he was not constructively discharged.  See id. (no constructive discharge found where plaintiff quit six months

-14-

after last reported incident of sexual harassment), and cases cited.

Here, Landrau has not adduced evidence of any incidents of mistreatment within a reasonable time of his resignation in February, 1995. The specific events to which he has affixed dates -- i.e., the written reprimands, Bou's attempt to frame him, Bou's failure to accommodate his disability -- occurred no later than June or July, 1994, at least seven months before Landrau's resignation. Landrau has therefore failed to provide sufficient evidence of constructive discharge, and, accordingly, failed to make out a prima case of discriminatory termination.[6] See Vega, 3 F.3d at 480. Hence, the district court properly awarded summary judgment for Banco Popular on the issue of constructive discharge.

C.    Race-based harassment

In his amended complaint and trial court brief, as well as in his appellate brief, Landrau asserted a claim of race-based harassment that is separable from the failure to promote

---

[6]Although the district court correctly determined that no rational juror could have believed that Landrau was constructively discharged, it nonetheless held that he passed the prima facie hurdle because he was qualified for Sandín's position. As to Landrau's termination claim, this was a non sequitur. See note 4, supra.

-15-

and constructive termination claims.[7]  See Lattimore, 99 F.3d at 463.  An employee states a claim under Title VII if he alleges offensive, race-based conduct that is severe or pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive.  See id.

> [W]hether an environment is "hostile" or "abusive" can be determined only by looking at all the circumstances.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

Unlike the failure to promote claim, Landrau's harassment claim is not time-barred.  As discussed supra, he described specific episodes of mistreatment as well as ongoing harassment occurring within the 300-day limitations period set forth in 42 U.S.C. § 2000e-5(e).

The district court stated that Landrau had not provided "enough evidence to support a finding of continuous harassment, unreasonably tight supervision, or imposition of a hostile

---

[7]Although Landrau sometimes characterizes the harassment as "retaliatory" in his briefs, he makes no effort to address the established framework for a Title VII retaliation claim, see, e.g., Simas, 170 F.3d at 44, i.e., he does not explicitly set forth evidence of protected activity or its causal connection to the harassment.  Hence, we do not consider a separate retaliation claim.

-16-

working environment." In so concluding, it referenced only the two written reprimands Landrau received after Bou became his supervisor and the break incident (in which Landrau brought co-workers to Bou to explain that he had given proper notice when he took a meal break). The court apparently did not take into account other specific aspects of the mistreatment Landrau alleged in his deposition and affidavit -- including, inter alia, the verbal criticisms, the monitoring of his whereabouts, the reference to "kinky hair," Bou's purported attempt to "frame" him, Bou's failure to accommodate Landrau's physical injury, and the complaint about his meeting with other black employees to discuss a discrimination claim -- that were not imposed on white employees.

There is, to be sure, some tension between Landrau's affidavit in support of his opposition to summary judgment and his deposition. In his affidavit he states that he was subjected to ongoing criticism and harassment, including Bou's "almost daily" verbal reprimands, weekly "yelling," and heightened monitoring of his work and whereabouts. But when asked earlier to describe specific "admonishments" in his deposition, Landrau enumerated only the two written reprimands and the break incident. The comprehensiveness of this response, however, is rendered somewhat ambiguous by the fact that when

asked whether he had received any "verbal admonishments," he mentioned "[t]he persecutions that I have always had," then went on to discuss the break incident.  He later stated in his deposition that he did not "recall" other "admonishments" at that time.  While fodder for impeachment, Landrau's statements do not involve the sort of direct contradiction that we have held fails to create a "genuine" factual dispute for summary judgment purposes.  See, e.g., Borowiec v. Local No. 1570, 889 F.2d 23, 27 (1st Cir. 1989).

Looking at the totality of the circumstances, we find the evidence in Landrau's affidavit and deposition, while close to the line, to be sufficient to withstand summary judgment.[8] We must, of course, consider the evidence and all reasonable inferences therefrom in the light most favorable to Landrau. See Buenrostro v. Collazo, 973 F.2d 39, 41 (1st Cir. 1992). This evidence might, if proven, support a race-based harassment claim.  See, e.g., Danco, Inc. v. Wal-Mart Stores, Inc., 178 F.3d 8, 16 (1st Cir. 1999) (plaintiff alleged comments or jokes of a racial nature); Lattimore, 99 F.3d at 463 (plaintiff

_____

[8]Also contained in the summary judgment record below is an excerpt from the deposition of Landrau's psychiatrist, who stated (based on his sessions with Landrau) that Landrau was called a "good Negro" by Banco Popular personnel. This evidence is inadmissible hearsay, however, and thus cannot be taken into account for purposes of the summary judgment calculus. See Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998).

alleged that he was coerced into performing tasks inconsistent with his medical restriction, unlike white employees). Alleged conduct that is not explicitly racial in nature may, in appropriate circumstances, be considered along with more overtly discriminatory conduct in assessing a Title VII harassment claim. See DeGrace v. Rumsfield, 614 F.2d 796, 800 (1st Cir. 1980) (evidence of equipment sabotage and co-workers' "silent treatment" considered along with racially explicit notes); see also Williams v. General Motors Corp., 187 F.3d 553, 563-64 (6th Cir. 1999) (sexual harassment); O'Shea v. Yellow Tech. Servs., Inc., 185 F.3d 1093, 1097 (10th Cir. 1999); Carter v. Chrysler Corp., 173 F.3d 693, 701 (8th Cir. 1999). We note further that there is evidence that Landrau complained about his alleged mistreatment to Banco Popular's management, and that he suffered emotional harm as a result of the harassment. On the present state of the record, we cannot say that there is no genuine issue of material fact concerning Landrau's race-based harassment claim. Thus, while we take no view on its ultimate merits, we must vacate the district court's entry of summary judgment on that claim and remand it for further proceedings not inconsistent with this opinion.

D. State law claim

On appeal, Landrau asserts that his discrimination claim under Puerto Rico Law 100 should survive summary judgment.[9] The district court did not analyze or even mention his Law 100 claim, but simply dismissed Landrau's complaint in its entirety. It seems likely that the district court, having decided that Landrau's Title VII claims should be dismissed, declined to retain jurisdiction over the state law claim. This disposition cannot stand in light of our reversal of the ruling on the Title VII harassment claim. We therefore vacate the district court's dismissal of Landrau's harassment claim under Law 100, and remand it for further consideration not inconsistent with this opinion.[10]

Banco Popular contends that Landrau has waived his Law 100 claim because he failed to argue it below in his opposition to summary judgment. In its brief in support of summary judgment, however, Banco Popular focused exclusively on Landrau's Title VII claims and did not address the Law 100 claim

---

[9]As with Landrau's Title VII claim, the state law claim appears to encompass discriminatory failure to promote, harassment and constructive discharge.

[10]For the reasons we have set forth regarding the similar federal claims, we affirm the dismissal of Landrau's state-law failure to promote and constructive discharge claims. In all events, we note that Landrau does not argue on appeal that the timeliness of these claims should be analyzed differently under Law 100 than under Title VII.

in any manner.[11]  Landrau could fairly have understood that Banco Popular was moving for summary judgment only on the Title VII claims, and that he was not required to address the merits of the Law 100 claim.

Affirmed in part and reversed in part, and remanded for further proceedings not inconsistent with this opinion.  Each party to bear his or its own costs.

---

[11]This failure, therefore, is distinguishable from Landrau's failure to oppose Banco Popular's statute of limitations argument.  See section A, supra.