**Raymond L. TOUSSAINT**

v.

**BRIGHAM AND WOMEN'S HOSPITAL, INC. and Partners Healthcare System, Inc.**

**CIVIL NO. 13-12083-RWZ**

United States District Court, D. Massachusetts.

Signed 10/15/2015

Collins L. Akukwe, Quincy, MA, for Plaintiff.

Eugene J. Sullivan, III, Patrick H. Foley, Holtz & Reed, LLP, Boston, MA, for Defendant.

## ORDER

RYA W. ZOBEL, UNITED STATES DISTRICT JUDGE

Plaintiff Raymond L. Toussaint ("Toussaint") claims that defendants Brigham and Women's Hospital, Inc. ("Brigham") and Partners Healthcare System, Inc. ("Partners") subjected him to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et *seq.* and Mass. Gen. Laws ch. 151B because of his race and national origin. He also claims that defendants terminated him in retaliation for his having filed an administrative complaint with the Massachusetts Commission Against Discrimination ("MCAD"). Defendants have moved for summary judgment (Docket # 18). For the reasons stated below, the motion is denied as to plaintiff's hostile work environment claim (Count I) and allowed as to plaintiff's retaliation claim (Count II).

## I. Factual Background

I first summarize the facts in the light most favorable to plaintiff, the non-moving party. See Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 172 (1st Cir.2015).

Toussaint is a black man who was born in the Republic of Trinidad and Tobago. He worked for Brigham for over 30 years—from about December 1978 to December 2011. For at least the last nine of those years, he worked as a maintenance engineer in the engineering department.

Plaintiff alleges that the trouble began on or about August 12, 2010, when he arrived at work to find a number of offensive notes in his workspace.[1] Toussaint notified his supervisor, Walter Gleeson ("Gleeson") and Brigham's security department. Erica Vozzella ("Vozzella"), an investigator in the security department, investigated Toussaint's complaint by reviewing video surveillance footage of the area where Toussaint had found the notes, but she was not able to determine who had left them.

Over the next several months, Toussaint found two other notes in his workspace: on or around January 4, 2011, a message written on his whiteboard,[2] and on or around February 10, 2011, a piece of plywood with text written on it.[3] On each occasion, he reported the note to Gleeson, and Vozzella investigated by reviewing video surveillance footage, but she again was unable to determine who left the notes.

On or around November 8, 2011, Toussaint found that the lock to the supply closet had been filled with glue. He reported this to Gleeson and Brigham security staff. Vozzella spoke with him and two other employees from the engineering department but could not determine who was responsible.

The final incident happened on or around December 5, 2011, when plaintiff returned from vacation to discover that someone had left a photograph at his workspace, a picture of him, a child, and a family member on the back of which was written "3 Niggers". Docket # 1-1 ¶ 22. He reported this to Gleeson and the Brigham security staff, but Vozzella's investigation yet again failed to identify the author. Toussaint believes that a Brigham employee wrote the several notes and glued the supply closet lock, but he does not know which employee was responsible.

Plaintiff filed a charge against Brigham with the MCAD on December 12, 2011 alleging discrimination on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and Mass. Gen. Laws ch. 151B. The MCAD issued a finding of Probable Cause on May 31, 2012.

Toussaint worked his last shift at Brigham on December 23, 2011. In early 2012, Brigham approved a leave of absence for him under the Family Medical Leave Act ("FMLA"). After his 12-week FMLA leave expired, Brigham held his position open for several months, but he apparently had no intention of returning, and he did not return. On December 14, 2012, Brigham sent him a letter to notify him of his termination effective December 21, 2012.

On May 8, 2013, Toussaint filed suit against the defendants in Massachusetts state court. Defendants removed the case to this court on August 27, 2013 (Docket # 1), and have now brought the instant motion for summary judgment on both of plaintiff's claims. Docket #18.

## II. Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any mate-

---

**1.** They respectively read: "A useless employee Ray," "I did asshole," and "Ray your [sic] a lazy Fucken [sic] pece [sic] of shit, say goodbye to this room asshole." Docket # 1-1 ¶¶ 7-9.

**2.** "A Lazy Fuck lives Here." Docket # 1-1 ¶ 12.

**3.** Hey Fuck Head, Ray I pissed in your coffee mug, the silver engineering one." Docket # 1-1 ¶ 15.

rial fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue is 'genuine' for purposes of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which might affect the outcome of the suit under the governing law." Poulis–Minott v. Smith, 388 F.3d 354, 363 (1st Cir.2004) (citations and internal quotations omitted). In considering whether or not a genuine issue of material fact exists, the court "must view the evidence in the light most favorable to the opposing party." Tolan v. Cotton, —— U.S. ——, 134 S.Ct. 1861, 1866, 188 L.Ed.2d 895 (2014).

## III. Analysis

I address each of the claims in turn.

### A. Hostile Work Environment

■ To establish a prima facie case for a hostile work environment claim, a plaintiff must prove:

(1) that he is a member of a protected class; (2) that he was subjected to unwelcome racial harassment; (3) that the harassment was based upon race; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that racially objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

See Douglas v. J.C. Penney Co., 474 F.3d 10, 15 (1st Cir.2007) (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir.2001)). Toussaint, a black man, is a member of a protected class. A reasonable jury could find that he was subjected to unwelcome racial harassment by the racial epithet on the back of a photograph at his work station. They could also conclude that this incident of harassment was based on race, and that it was objectively and subjectively offensive. See Wilson v. Moulison N. Corp., 639 F.3d 1, 7 (1st Cir.2011). Therefore, whether summary judgment is appropriate turns on two questions: (1) whether the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment, and (2) whether a basis for employer liability has been established.

### 1. Severe Or Pervasive

■ Under both Title VII and Chapter 151B, to survive summary judgment, Toussaint must show that he was subject to "offensive, race-based conduct that is severe or pervasive enough" that it altered the conditions of his employment. Landrau–Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir.2000); Trent v. ADT Sec. Servs., Inc., No. CIV.A. 11–11912–RGS, 2013 WL 4512052, at *6 n. 17 (D.Mass. Aug. 22, 2013) ("The state and federal claims for hostile work environment are evaluated similarly."). Whether harassment is severe and pervasive is determined by assessing the "totality of the circumstances." Valentin–Almeyda v. Municipality Of Aguadilla, 447 F.3d 85, 94 (1st Cir.2006). "Alleged conduct that is not explicitly racial in nature may, in appropriate circumstances, be considered along with more overtly discriminatory conduct in assessing a Title VII harassment claim." Landrau–Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 614 (1st Cir. 2000); Jackson v. Quanex Corp., 191 F.3d 647, 662 (6th Cir.1999) ("[E]ven though a certain action may not have been specifically racial in nature, it may contribute to the plaintiff's proof of a hostile work environment if it would not have occurred but for the fact that the plaintiff was African American.") (citation omitted).

Plaintiff has presented evidence of a number of harassing notes between August 2010 and December 2011, including one that was overtly racial in nature, glue in the lock to the supply closet he used, which clearly sends a similar message. In addition, although only one incident was overtly racial in nature, the totality of circumstances amounted to severe and pervasive harassment. See Jackson, 191 F.3d at 662 ("[A] showing of the use of racial epithets in a work environment may create an inference that racial animus motivated other conduct as well.") (internal quotations and citations omitted); Carter v. Chrysler Corp., 173 F.3d 693, 701 (8th Cir.1999) ("All instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII if they are part of a course of conduct which is tied to evidence of discriminatory animus."); Rutledge v. Macy's E., Inc., No. 01–12–P–H, 2001 WL 1117108, at *10 (D.Me. Sept. 17, 2001) (given "totality of circumstances" that included racially derogatory remarks, a reasonable jury could infer that "suspicious incidents, such as the scratching of Rutledge's car and the opening of her purse, ... stemmed from racial animus."). In sum, Toussaint has made a sufficient showing of the existence of a hostile work environment to withstand summary judgment.[4],[5]

## 2. Employer Liability

This brings us to employer liability. A threshold question in this analysis is whether the alleged hostile work environment was created and perpetuated by a coworker or a supervisor. Wilson, 639 F.3d at 7 ("A plaintiff must satisfy different standards for establishing employer liabili-

4. Toussaint's claim also survives summary judgment because a reasonable jury could find that the photograph incident alone is severe enough that it altered the conditions of his employment. Generally, "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). "However, a single act of harassment may, if egregious enough, suffice to evince a hostile work environment." Noviello v. City of Boston, 398 F.3d 76, 84 (1st Cir.2005). The word "nigger" has unique meaning that makes its use particularly egregious. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir.2001) ("Far more than a 'mere offensive utterance,' the word 'nigger' is pure anathema to African-Americans."); Chery v. Sears, Roebuck & Co., No. CIV.A. 12–12131–GAO, 2015 WL 1346810, at *9 (D.Mass. Mar. 24, 2015) ("Indeed, '[i]t is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination. This word is 'perhaps the most offensive and inflammatory racial slur in English, ... a word expressive of racial hatred and bigotry.' '") (citing McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1116 (9th Cir.2004)).

5. Defendants are correct that "[a] plaintiff who brings a hostile work environment claim under Title VII must file [his] claim within 300 days of an act of discrimination, and in general cannot litigate claims based on conduct falling outside of that period." O'Rourke, 235 F.3d at 730. However, under the continuing violation doctrine, an employee may "seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is some violation within the statute of limitations period that anchors the earlier claims." Id. (citation omitted). There is no dispute that Toussaint filed his MCAD claim within 300 days of finding the racial epithet written on the back of the photograph. See Docket # 1 ¶ 22 (Toussaint alleges that he found the photograph on December 5, 2011); Docket # 25-2 (MCAD claim filed on December 16, 2011). Just as a reasonable jury could find that the earlier notes and the glue in the lock incident were motivated by racial animus given the totality of circumstances, they also could conclude that those incidents were part of a series of discriminatory acts. Therefore, no part of Toussaint's hostile work environment claim is time-barred.

ty in a hostile work environment case depending on whether the harasser is a supervisor or co-employee."). Toussaint has stated that he believes it was another Brigham employee who left the notes and glued the supply closet lock. He has not charged a supervisor with such misconduct. Therefore, I treat Toussaint's claim as one of coworker harassment. See Noviello, 398 F.3d at 96.

Under both Title VII and Chapter 151B, "[w]hen coworkers, rather than supervisors, are responsible for the creation and perpetuation of a hostile work environment ... an employer can only be liable if the harassment is causally connected to some negligence on the employer's part." Id. at 95. In such circumstances, the employer may be liable if it "knew or should have known about the harassment, yet failed to take prompt action to stop it." Id. The First Circuit has held that employer liability for co-worker harassment is essentially a question of negligence. See Reed v. MBNA Mktg. Sys., Inc., 333 F.3d 27, 32 n. 1 (1st Cir.2003); see also Noviello, 398 F.3d at 95 ("When coworkers ... are responsible for the creation and perpetuation of a hostile work environment ... an employer can only be liable if the harassment is causally connected to some negligence on the employer's part.") (citations omitted); Rosemond v. Stop and Shop Supermarket Co., 456 F.Supp.2d 204, 218 (D.Mass.2006).

Because there is no dispute that Brigham knew about the notes and the lock incident, the question is whether Brigham took prompt action to stop the harassment. There is evidence that Brigham took some action when plaintiff reported the various incidents. Depending on the incident, the security officer spoke with Toussaint, Gleeson, and certain other employees, and/or reviewed footage from the security cameras. Docket # 19-3. However, the adequateness of Brigham's response "involves reasonableness assessments not easily amenable to summary judgment." Rosemond, 456 F.Supp.2d at 218. "Determining what constitutes a 'prompt and appropriate' employer response to allegations of [ ] harassment often requires the sort of case-specific, fact-intensive analysis best left to a jury." Forrest v. Brinker Int'l Payroll Co., LP, 511 F.3d 225, 232 (1st Cir.2007). Here, a reasonable jury could conclude that Brigham could or should have done more in response to plaintiff's reports, wherefore defendants' motion for summary judgment on plaintiff's hostile work environment claim (Count I) is denied.

### B. Retaliation

Toussaint's retaliation claim, under both Title VII and Chapter 151B, is governed by the familiar McDonnell Douglas burden shifting framework. Pina v. Children's Place, 740 F.3d 785, 801 (1st Cir.2014) (citing Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir.2008)) (referring to McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–805, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Under that framework, Toussaint must carry the initial burden to establish a prima facie case of retaliation. If he does that, the burden then shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If they articulate such a reason, the burden shifts back to Toussaint to show that defendants' stated reason is in fact pretext. McDonnell Douglas, 411 U.S. at 802–805, 93 S.Ct. 1817; Almeder v. Town of Bourne, 922 F.Supp.2d 160, 169 (D.Mass.2013).

To establish a prima facie case of retaliation under Chapter 151B and Title VII, Toussaint "must establish that: 1) he engaged in a statutorily protected activity, 2) he suffered an adverse employment action, and 3) the protected conduct and

adverse employment action are causally connected." Pina, 740 F.3d at 801 (citing Noviello, 398 F.3d at 88). Here, Toussaint engaged in protected activity when he filed a charge with the MCAD, and he suffered an adverse employment action when Brigham terminated his employment. See Pearson v. Massachusetts Bay Transp. Auth., 723 F.3d 36, 42 (1st Cir.2013) ("there is no dispute...that being terminated is an adverse employment action"); Vil v. Price WaterhouseCoopers LLP, No. CIV.A. 11–10780–GAC), 2012 WL 3202852, at *14 (D.Mass. Aug. 2, 2012) ("Internal complaints as well as charges to the EEOC and MCAD are protected activity.") (citing White v. New Hampshire Dept. of Corr., 221 F.3d 254, 262 (1st Cir.2000)). Therefore, the question is whether a reasonable jury could find that the two events are causally connected.

 Toussaint filed his MCAD charge on December 12, 2011, and Brigham terminated his employment on December 21, 2012 (having sent him a notification letter on December 14, 2012). Docket # 1-3. Plaintiff has not put forth any evidence of a causal connection other than the fact that the adverse employment action followed the protected activity by about a year. Where, as here, there is no other evidence of a causal connection, a one-year temporal connection is insufficient to forestall summary judgment. See Benoit v. Tech. Mfg. Corp., 331 F.3d 166, 175 (1st Cir.2003); see also Colon–Fontanez v. Municipality of San Juan, 660 F.3d 17, 43 (1st Cir.2011) ("[A] near twelve month passage of time between the asserted protected conduct and alleged adverse action weighs against a finding of

causality"). Absent a causal connection between the protected activity and his termination, Toussaint has failed to establish a prima facie case, and summary judgment is appropriate on his retaliation claim (Count II).[6]

## IV. Conclusion

The motion for summary judgment (Docket # 18) is DENIED as to Count I, and ALLOWED as to Count II.

---

**6.** Moreover, even if Toussaint had established a prima facie case of retaliation, summary judgment would still be appropriate. Defendants have articulated a legitimate, non-discriminatory reason for the adverse employment action—namely, that they terminated Toussaint because he did not return to work

after his FMLA leave expired, or after several additional months of unpaid leave. See Docket # 19–2 ¶¶ 8–10. Toussaint presents no explanation for why any reasonable jury could conclude that defendants' stated reason is a pretext.