# United States Court of Appeals
## For the First Circuit

No. 01-1023

VÍCTOR F. RIVERA-RODRÍGUEZ,
SANDRA BELTRÁN-MCENTEE,
CONJUGAL PARTNERSHIP RODRÍGUEZ-MCENTEE,

Plaintiffs, Appellants,

v.

FRITO LAY SNACKS CARIBBEAN,
A DIVISION OF PEPSICO PUERTO RICO, INC.
JOSÉ LUIS PRADO, ROSA ELENA ACEVEDO,
CONJUGAL PARTNERSHIP PRADO-ACEVEDO,
ENRIQUE NIÑO, LAURA ANDRADE,
CONJUGAL PARTNERSHIP NIÑO-ANDRADE,
ABC INSURANCE,

Defendants, Appellees.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

———————————

Before

Torruella and Lipez, Circuit Judges,

and Tauro,* District Judge.

———————————

Roberto Busó-Aboy, for appellants.
Jeffrey A. Van Detta, with whom Lespier & Muñoz-Noya, Roberto
Ariel Fernández, Kilpatrick Stockton, LLP and Carolyn Sawyer, were on
brief, for appellees.

———————————

* Of the District of Massachusetts, sitting by designation.

September 10, 2001

**TAURO, District Judge.** Plaintiff Victor F. Rivera-Rodriguez ("Rivera") sued his former employer Frito Lay Snacks Caribbean, Inc. ("Frito Lay"); Jose Luis Prado ("Prado"), Frito Lay's President; and Enrique Niño ("Niño"), Frito Lay's Director of Human Resources. Rivera claims that Defendants violated Title VII of the Civil Rights Act (Title VII), 42 U.S.C. §§ 2000e-2000e-17 (2000); the Age Discrimination in Employment Act (ADEA),29 U.S.C. §§ 621-634; and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213, when they created a hostile work environment and terminated him based on his age, disability, and national origin.

The district court granted Defendants' Motion for Summary Judgment, and Rivera appeals. For the following reasons, the district court's decision is affirmed in part and reversed in part.

## I.   BACKGROUND

Rivera is fifty years-old, and suffers from chronic asthma and malignant lymphoma. In 1984, he began working for Frito Lay, a division of Pepsico, Puerto Rico, Inc. In September 1985, Rivera became Frito Lay's Director of Human Resources for the Caribbean, where his chief responsibility was communicating with the company's sales force. Throughout his tenure, Rivera was supervised by Don McFarlane, Regional Human Resources Vice President for Frito Lay's Latin American Region. Rivera consistently received high marks in his performance reviews.

In March 1993, Frito Lay's Puerto Rican operations moved under Pepsico's Latin American Region operations, headquartered in Mexico City. The reorganization resulted in a number of Mexican nationals assuming high-ranking positions, including that of president filled by Defendant Prado. Prado supervised McFarlane, and both Prado and MacFarlane reported to another Mexican national, Rogelio Rebolledo - Latin American Region President.

In the spring of 1995, Frito Lay's sales employees filed a petition with the National Labor Relations Board for representation by the Seafarers' International Union. Rivera worked with MacFarlane and Prado to discourage the employees from electing to unionize. But despite their efforts, the union prevailed by a close margin in September 1995.

After the election, Frito Lay brought in Defendant Niño, allegedly for his experience dealing with unions. Frito Lay immediately reassigned many of Rivera's tasks to Niño, a Mexican national who is seven years younger than Rivera. Soon thereafter, in March 1996, MacFarlane told Rivera that his position was being eliminated and gave Rivera three employment options: transfer to the Dominican Republic; transfer to Brazil; or become a human-resources consultant to Frito Lay. Rivera opted to transfer to the Dominican Republic.

-4-

Rivera had worked in the Dominican Republic for eight months when MacFarlane informed him that Frito Lay was eliminating his position because of a significant financial downturn in the company's Dominican Republic operations. Rivera met with Prado on November 6, 1996 to discuss employment alternatives. Prado suggested that Rivera consider becoming a human-resources consultant to Frito Lay. Rivera rejected this proposal, asking instead to be reinstated to his prior position in Puerto Rico.

On January 29, 1997, MacFarlane offered Rivera a four-year consulting contract that Rivera rejected. On February 28, 1997, Niño gave Rivera a termination letter signed by Prado. Rivera's termination was effective March 3, 1997. He was forty-six-years old.

Rivera filed an administrative charge with the Equal Opportunity Employment Commission (EEOC) on March 10, 1997, and the EEOC issued a right-to-sue letter on May 19, 1997.

## II. DISCUSSION

Rivera alleges that Defendants' discriminatory acts created both a hostile work environment and resulted in his unlawful termination. We review the district court's decision to grant Summary Judgment de novo, with all reasonable doubts and issues of credibility resolved in the non-movant's favor. Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 611 (1st Cir. 2000); Hernandez-Loring v. Universidad Metropolitana, 233 F.3d 49, 51 (1st Cir. 2000).

A.        Hostile Work Environment

Rivera claims that he was subjected to a hostile work environment at Frito Lay. In granting Summary Judgment, the district court first concluded that all alleged discriminatory events occurring before May 10, 1996 were time-barred and could not be considered in its hostile-work-environment analysis. The court then determined that only Rivera's termination from Frito Lay occurred after that date.

Under Title VII, the ADEA, and the ADA, a plaintiff must file an employment-discrimination charge with the EEOC within 300 days of the alleged discrimination. 42 U.S.C. § 2000e-5(e)(1) (2000) (noting Title VII's charge-filing requirement); 29 U.S.C. § 626(d)(2) (stating ADEA's charge-filing requirement); Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277-78 (1st Cir. 1999) (stating that Title VII's charge-filing requirement applies to the ADA). A plaintiff generally cannot litigate claims based on conduct falling outside of this period. Provencher v. CVS Pharmacy, 145 F.3d 5, 13-14 (1st Cir. 1998). But where the violation is "of a continuing nature, the charge of discrimination filed . . . may be timely as to all discriminatory acts encompassed by the violation so long as the charge is filed during the life of the violation or within the statutory period . . . ." Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 868 (1st Cir. 1997) (internal quotations omitted).

Continuing violations can be systemic or serial. Id. at 869. Systemic violations occur where an employer maintains a discriminatory policy, responsible for multiple discriminatory acts that may fall outside of the limitations period. Id. If the policy or practice continues into the limitations period, the complaint is considered timely. Sabree v. United Bhd. of Carpenters and Joiners Local No. 33, 921 F.2d 396, 400-02 (1st Cir. 1990) (citations omitted).

Serial violations, however, occur where the plaintiff experiences a number of similar discriminatory acts arising from the same discriminatory animus. Id. at 400. Such acts are timely if at least one discriminatory event occurs within the statutory period that anchors the earlier claims. Id. This anchor violation is only timely if it is part of and exposes a pattern of actionable discrimination. Provencher, 145 F.3d at 14.

In O'Rourke v. City of Providence, this court set forth three factors to assess the sufficiency of a serial-continuing-violation claim: (1) whether the subject matter of the discriminatory acts is sufficiently similar to render the otherwise untimely acts substantially related to the timely acts; (2) whether the acts occur frequently, repetitively, or continuously or are isolated and discrete; and (3) whether the acts are sufficiently permanent to make the plaintiff aware of the need to assert his or her rights. 235 F.3d 713,

731 (1st Cir. 2001) (internal citations omitted); see Sabree, 921 F.2d at 402.

Rivera alleges that Defendants' actions constitute serial-continuing violations of age, disability, and national-origin discrimination. Particularly, he states that the following incidents establish a clear discriminatory pattern:

(1) At an April 1994 staff meeting, Rebolledo told Rivera to "be quiet, you're stale" (Rivera Dec. 5, 1998 Dep. at 24.);

(2) At an April 28, 1995 human-resources-plan meeting in Mexico, Prado and Rebolledo referred to Puerto Ricans as monkeys. When talking about the Frito Lay administration, for example, Rebolledo stated that "those monkeys [don't] know what they [are] doing" (Id. at 46.);

(3) At an October 10, 1995 meeting with a recruiting firm, Prado expressed a preference for employees with "youth and intelligence" and voiced concern that "some of the candidates referred to him were over forty years old" (Id. at 34-37.);

(4) On October 23, 1995, Prado and Niño told labor consultant Ray Micus that the decisive factor in terminating supervisory-sales employees was age (Id. at 41-44.);

(5) During a November 1995 lunch meeting, Rivera commented that he was not feeling well, to which Niño responded that Rivera's

health problems were due to "ansia", meaning antiquity or old age (Id. at 40-41.);

(6) On January 24, 1996, Niño told labor lawyer Dwayne Aldrich that Rivera's gray hair must mean he's sixty years old (Id. at 39.); and

(7) On January 18, 1997, Prado and Niño stated that Rivera's health condition was due to "La bola de años", which translates to ball of years (Id. at 31-33.).

Rivera argues that the subject matter of the alleged acts always related to his age, medical condition, and nationality; that there were numerous incidents; and that until February 1997, he had no reason to believe that he was being discriminated against and did not have a future with the company. Defendants counter that Rivera merely advances discrete, isolated events - unrelated to his ultimate termination. Counting back 300 days from March 10, 1997, the date Rivera filed his EEOC charge, only Prado's and Niño's comments that Rivera's health condition was due to "la bola de años" are timely.[1]

1.   Disability-Based Hostile Work Environment

Rivera argues that because this anchoring violation refers to Rivera's health, the comments demonstrate disability discrimination, thus rendering timely all similar incidents. Rivera,

_____

[1] Although the district court only considered Rivera's termination timely, Rivera alleges that Prado's and Niño's comments, not the termination itself, are the anchoring violation.

-9-

however, overlooks the fact that he has not shown that he is statutorily disabled.

The ADA proscribes employers from discriminating against a qualified individual with a disability. 42 U.S.C. § 12112(a). A "qualified individual" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Id. § 12111(8). A "disability" includes "a physical or mental impairment that substantially limits one or more major life activities." Id. § 12102(2)(A). "Substantially limits" means that the person cannot perform a major life function or is "significantly [limited in] the condition, manner or duration under which [the] individual can perform a particular major life activity, as compared to the average person in the general population . . . ." 29 C.F.R. § 1630.2(j)(ii).

We apply a three-step analysis when considering statutory disability. Bragdon v. Abbott, 524 U.S. 624, 631 (1998). First, we determine whether Rivera's asthma and lymphoma are physical impairments. Second, we determine whether Rivera's work -- the life activity he claims was affected -- meets the ADA definition of a major life activity. Id. Third, "tying the statutory phrases together, we ask whether the impairment substantially limits the activity found to be a major life activity." Lebron-Torres v. Whitehall Labs., 251 F.3d 236, 239-40 (1st Cir. 2001).

-10-

Rivera's conditions -- asthma and lymphoma -- meet the EEOC definition of impairment, and the EEOC recognizes working as a "major life activity." Id. But Rivera has not presented any evidence that either condition substantially limits his ability to work. In fact, Rivera argues that he was capable of performing all tasks required of him by Frito Lay without assistance. Absent evidence that Rivera suffered from a substantially limiting impairment, he has not demonstrated that he is disabled. The district court correctly granted Defendants' Summary Judgment Motion on Rivera's disability-based, hostile-work-environment claim.

### 2.    National-Origin Hostile Work Environment

As stated above, the anchoring violation concerning Prado's and Niño's "la bola de años" comments references only Rivera's age and health. Any prior incidents allegedly supporting a national-origin-based, hostile-work-environment claim are time-barred. Hence, the district court correctly granted Summary Judgment on this claim.

### 3.    Age-Based Hostile Work Environment

As stated above, the anchoring violation refers to Rivera's age. As a threshold matter, we find that the seven-year age difference between Rivera and Niño, who allegedly took over Rivera's job duties, is sufficient to support a prima-facie case of age discrimination. See Williams v. Raytheon Co., 220 F.3d 16, 21 (1st Cir. 2000) (collecting cases holding that age difference of less than

-11-

five years is insufficient for a prima-facie showing).  Of the seven allegedly discriminatory incidents, all but one -- Rebolledo's reference to Puerto Ricans as monkeys -- refers to Rivera's age.  The subject matter of these six incidents is sufficiently similar to the anchoring violation to meet the first O'Rourke criterion of whether the subject matter of the discriminatory acts is sufficiently similar to render the otherwise untimely acts substantially related to the timely acts.  O'Rourke, 235 F.3d at 731.

The second O'Rourke criterion requires that the acts occur frequently, repetitively, or continuously, and are not isolated and discrete.  The six age-related comments occurred within a two-year period, sufficiently numerous to be considered continuous.  Id.

We next are faced with the most difficult of the O'Rourke criteria: whether the volume of discriminatory acts, as a matter of law, should have alerted Rivera of the need to file a discrimination claim.  Id. at 732.  The issue is difficult because "[a] plaintiff may be unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern."  Id. (quoting Sabree, 921 F.2d at 402). Although in certain circumstances, notice may be resolved as a matter of law, the question is often better determined by juries, who can reflect on their own experiences.  Id.

-12-

Rivera argues that he did not realize Defendants' discriminatory animus or that he had an actionable claim until February 1997, when his position in the Dominican Republic was eliminated. In support, Rivera points to MacFarlane's testimony, stating that Rivera was told the company wanted him to remain a part of the team. Rivera also notes that Prado testified at his deposition that Rivera did not express any uneasiness with Niño's presence in the Puerto Rican operations. Such reassurance and lack of complaint lends support to Rivera's contention that he could not have perceived an overall discriminatory pattern any earlier.

Because a jury could find that all O'Rourke criteria were met on the six age-related incidents, the district court erred by ruling that they were time-barred. From these incidents, we next consider whether a reasonable jury could find that Rivera was subjected to a hostile work environment.

Hostile-work-environment claims were first recognized in the sex-discrimination context, but have since been recognized for members of any protected class. Lattimore v. Polaroid Corp., 99 F.3d 456, 463 (1st Cir. 1996). To prove a hostile-work-environment claim, a plaintiff must provide sufficient evidence from which a reasonable jury could conclude that the offensive conduct "is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." Landrau-Romero,

212 F.3d at 613.  When assessing whether a workplace is a hostile environment, courts look to the totality of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is threatening or humiliating, or merely an offensive utterance; and whether it unreasonably interferes with the employee's work performance.  Id. (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993).

The district court concluded that no reasonable jury could find that Rivera was subjected to a hostile work environment because even if timely, the incidents were inadmissible because Rivera failed to show personal knowledge.  Our review of the record reveals otherwise.

Neither Party disputes that Rivera is competent to testify to those allegedly discriminatory statements made directly to him. These include Rebolledo's statement to Rivera that he was "stale", Niño's comment to Rivera that his health problems were due to "ansia", and Prado's and Niño's statements that Rivera's health problems were due to "la bola de años".

The remaining allegations include Prado's statements to a recruiting firm that Frito Lay needed employees with youth and intelligence and should discourage candidates over forty, Prado's and Niño's discussions with Micus that the decisive factor in terminating supervisory-sales employees was age, and Niño's comment to Aldrich that

-14-

Rivera's gray hair must mean he's sixty years old.  The record indicates that Rivera was present on all three occasions.

Rivera's December 5, 1998 deposition reveals that he was present when Prado made the statement to the recruiting firm. Specifically, Rivera testified that "[o]ne time that we were with a company, a group of head hunters, [Prado] mentioned that the company...needed...young and intelligent blood...." (Rivera's Dec. 5, 1998 Dep. at 34, 36 (emphasis added).)

As for Prado's and Niño's discussions with Micus that the decisive factor in terminating supervisory-sales employees was age, Rivera's testimony again reveals his presence.  Rivera stated that "[t]here was one time we were in the big conference room, when we were discussing with a consultant called Ray Micus, post-election strategies in sales.  And we were, in fact, looking into who we could retire, who were over 50-something years old. . . [Prado] wanted to retire anybody that was over 50 years old in the company." ( Id. at 41, 44 (emphasis added).)

Rivera also was present when Niño commented to Aldrich that Rivera's gray hair must mean he's sixty years old. Rivera  testified in his deposition that "[t]here was one time when we were with the attorney[] Duane Aldridge...[who] asked where I was from.  And I said Vieques.  And he said, ah, they must grow tall people with grey hair there.  And [Niño] said yes, yes, yes, also 60 year[] old[s]. . .."

(Id. at 39.)  Because Rivera was present when each of these statements were made, the district court erred in disregarding his testimony.

Considering the totality of the circumstances, a reasonable jury could find that Rivera was subjected to a hostile work environment based on his age.  On six separate occasions, Frito Lay's president, its Latin American Region President, and/or the Director Human Resources for the Caribbean made seemingly derogatory, age-related statements about Rivera.  Because a question of fact exists over whether these comments created a hostile work environment, the district court erred in granting Summary Judgment on Rivera's age-based, hostile-work-environment claim.

B.      Termination

We turn now to Rivera's wrongful-termination claim.  Where a plaintiff has no direct evidence of discrimination and must prove his or her case circumstantially, this court looks to the totality of the evidence, guided by the familiar McDonnell Douglas-Burdine-Hicks framework.  Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 430 (1st Cir. 2000).  Under this burden-shifting test, the plaintiff first must prove a prima-facie case of discrimination.  An employee alleging discrimination must show that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was discharged; and (4) other similarly situated employees who were not members of the

protected class were treated more favorably. <u>Mulero-Rodriquez</u> v. <u>Ponte, Inc.</u>, 98 F.3d 670, 673 (1st Cir. 1996).

If the plaintiff demonstrates a prima-facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its challenged actions. <u>Texas Dep't of Cmty. Affairs</u> v. <u>Burdine</u>, 450 U.S. 248, 254-55 (1981). If the defendant carries this burden of production, the plaintiff must prove that the legitimate reasons were mere pretext for discrimination. <u>Id.</u> at 253.

The district court assumed that Rivera made out a prima-facie case that he was wrongfully terminated as a result of age and national-origin discrimination, assumptions Frito Lay does not appeal. The burden of production then shifted to Frito Lay to demonstrate legitimate reasons for terminating Rivera. The district court concluded that Frito Lay met its burden by proffering that: a severe downturn in the Dominican Republic operations during the second half of 1996 required Frito Lay to eliminate Rivera's position; the company refused to rehire Rivera in Puerto Rico as the Director of Human Resources because that position no longer existed; the company was unhappy with the fact that the sales force unionized during Rivera's tenure; and the company preferred Niño as Director of Human Resources. Finding most of Rivera's testimony time-barred, the district court concluded that Rivera failed to produce sufficient evidence of pretext.

As stated above, the court correctly granted Summary Judgment on Rivera's disability-discrimination claim because Rivera failed to produce any evidence of a statutory disability. We only consider Rivera's contention that the district court erred by disregarding evidence from which a reasonable jury could conclude that Frito Lay's reasons were pretext for age and national-origin discrimination.

Rivera theorizes that Frito Lay, motivated by discriminatory animus, conspired to force him from the company. He contends that Frito Lay knew of the economic situation in the Dominican Republic before transferring him, but did so to free his position for Niño, a younger, non-Puerto Rican.

To show pretext, Rivera first points to the undisputed fact that Frito Lay did not move his family to the Dominican Republic, while it moved Niño's family to Puerto Rico. This conduct, Rivera argues, indicates that Frito Lay knew - before moving Rivera - that his position in the Dominican Republic would be eliminated, and hired Niño to permanently replace Rivera and prevent Rivera from later returning to Puerto Rico.

To counter Frito Lay's stated rationale that it did not rehire Rivera because he was responsible for the 1994 unionization of the sales force, Rivera argues that he successfully directed an anti-unionization campaign for Frito Lay in 1989. As part of that campaign, Rivera implemented procedures viewed favorably by employees. He claims

-18-

that the 1994 unionization resulted from the Mexican management's violation of those procedures.

Rivera states, without dispute, that he had extensive collective-bargaining experience with a former employer.  Thus, he claims, Frito Lay's purported reasons for not reassigning Niño and rehiring him -- that only Niño had collective-bargaining experience at Frito Lay and was capable of implementing an organizational-development strategy for dealing with the new union -- were false.

Rivera also contends that the evidence contradicts Frito Lay's argument that Rivera was not replaced by the younger Niño.  Frito Lay states that Rivera's position in Puerto Rico was eliminated, and that his duties were split between Niño and Luis Noriega, a Puerto Rican several years Rivera's senior.  Rivera counters, however, that Niño assumed many, if not most of his responsibilities, and was given Rivera's title of Director of Human Resources.  From this, he argues a jury could find that Niño replaced him.

Rivera lastly argues that Prado and Niño made discriminatory remarks based on Rivera's age and national origin: Rebolledo called Rivera stale; Prado and Rebolledo referred to Puerto Ricans as monkeys; and Prado, in discussions with a recruiting firm, expressed a preference for young, intelligent employees and a lack of preference for candidates in their forties. Frito Lay asserts that the court must disregard all of these allegedly discriminatory statements because they

were not made by the sole decision-maker regarding Rivera's employment -- MacFarlane.

But Rivera contends that Prado and Rebolledo approved, and thereby influenced, MacFarlane's decisions concerning Rivera's employment. Prado testified in his deposition that he participated in some respect in Rivera's employment decisions. (Prado Dep. at 50.) Moreover, MacFarlane testified that he discussed his decisions about Rivera's employment with Prado and Rebolledo. (MacFarlane Dep. at 53.)

A plaintiff's prima-facie case, combined with sufficient evidence to find that an employer's asserted justification is false, may permit a trier of fact to conclude that the employer unlawfully terminated the plaintiff. See Reeves v. Sanderson Plumbing, 530 U.S. 133, 148 (2000). Evidence of biased comments may support an inference of pretext. Dominguez-Cruz, 202 F.3d at 433. And discriminatory statements related to the decisional process may be sufficient to prove an employer's alleged discriminatory animus. Shorett v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998).

Certainly Rivera has proffered sufficient evidence to overcome Summary Judgment on his age and national-origin-based, wrongful-termination claims. Rivera has shown a genuine dispute over material facts regarding whether Frito Lay knew of the financial situation in the Dominican Republic before transferring Rivera, whether the 1994 unionization was Frito Lay's true reason for not rehiring

-20-

Rivera, whether Rivera was replaced by a younger non-Puerto Rican, and whether MacFarlane was the sole decision-maker on Rivera's employment. Accordingly, the district court erred by granting Frito Lay's Summary-Judgment Motion on Rivera's wrongful-termination claims based on his age and national origin.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment is AFFIRMED in part and REVERSED in part.

**Judgment affirmed in part, and reversed in part.**