Teresa **RIVERA CORDERO**,
Plaintiff(s),

v.

The **AUTONOMOUS MUNICIPALITY
OF PONCE**, Defendant(s).

No. 99–1184 (JAG).

United States District Court,
D. Puerto Rico.

Jan. 22, 2002.

Edgardo L. Rivera-Rivera, San Juan, PR, for Plaintiff.

Jose L. Gandara, Bauza & Davila, San Juan, PR, for Defendant.

### OPINION AND ORDER

GARCIA GREGORY, District Judge.

Plaintiff Teresa Rivera Cordero ("Rivera Cordero") sued defendant The Autonomous Municipality of Ponce ("Ponce") for sex and age-based discrimination, pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*, and various state laws. Ponce has filed a motion to dismiss the Complaint (Docket No. 5), contending that Rivera–Cordero's claims are time-barred. For the reasons set forth below, the Court grants Ponce's motion.

### FACTUAL BACKGROUND

Rivera Cordero was born on July 22, 1924 and lives in Ponce. (Docket No. 2, Amended Complaint, ¶ 2). She worked as a municipal employee from 1974 until Oc-

tober 30, 1997. (*Id.*, ¶ 3.) Throughout her tenure with Ponce, Rivera Cordero worked as a receptionist at various municipal offices and dependencies, including the Municipal Assembly and the Tourism Office. (*Id.*, ¶ 4.)

In 1992, Luis A. Morales, then-President of the Ponce Municipal Assembly, hired Guillermo Jimenez–Monroig as Secretary of the Municipal Assembly. (*Id.*, ¶ 5.) Jimenez–Monroig thereby became Rivera Cordero's immediate supervisor. (*Id.*, ¶ 6.) Shortly after his appointment, Jimenez–Monroig "start[ed] a pattern" of harassment against Rivera Cordero. (*Id.*) Jimenez–Monroig directed several derogatory remarks at Rivera Cordero, followed her to the restroom, shouted insults while she was inside, and occasionally opened the restroom door while she was still inside, without first asking for permission.[1] (*Id.*, ¶ 7–8.) Rivera Cordero complained to Morales about Jimenez–Monroig's behavior, but Morales took no action, and Jimenez–Monroig's conduct remained unchanged. (*Id.*, ¶ 9.) Rivera Cordero's complaints prompted Jimenez–Monroig to strip her of all her duties and responsibilities. (*Id.*, ¶ 10.)

In March, 1994, Rivera Cordero sought help from attorney Pablo Colon–Santiago, who thereafter asked Ponce for Rivera Cordero's personnel file. (*Id.*, ¶ 11.) Attorney Colon–Santiago's request prompted Morales to demote Rivera Cordero and to reduce her monthly salary by $300.00. (*Id.*, ¶ 12.) Sometime thereafter, she was transferred to a Ponce municipal hospital, but given no explanation for the transfer. (*Id.*) The pattern of discrimination and harassment continued at the hospital. (*Id.*, ¶ 14.) The Complaint, however, does not contain specific allegations describing any incidents of discrimination during her tenure at the hospital.

In June, 1994, Rivera Cordero was transferred to the Ponce Tourism Office, where the discrimination continued. (*Id.*, ¶ 15.) She requested an assignment of duties and adequate workspace, but was provided with neither. (*Id.*, ¶ 16.) The only comment she received from her supervisors in response to her request was that she should quit her job because of her age. (*Id.*, ¶ 17.) As a result of these incidents, Rivera Cordero developed a nervous condition for which she received professional treatment. (*Id.*, ¶ 18.) She went on sick leave sometime thereafter.[2]

On September 14, 1994, Rivera Cordero filed charges before the Anti–Discrimination Unit ("ADU") of the Puerto Rico Labor Department, claiming that Jimenez–Monroig had sexually harassed her and discriminated against her because of her age. (Docket No. 17 at 1.) The ADU thereafter transferred the case to the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) On September 26, 1995, the EEOC dismissed the charges, on the grounds that the evidence gathered by the Commission "did not reveal that any harassment took place." (*Id.*, Exh. B). Specifically, the EEOC's investigation found, first, that there were other women similar in age to Rivera Cordero who were still working at Ponce and had not filed any complaints about her supervisor. Second, the investigation found that Rivera Cordero was transferred to another department "upon [her] request" and, as a result, she was no longer in contact with

---

1. Rivera Cordero also claims that Morales made derogatory and discriminatory comments directed at her. (Amended Complaint, ¶ 13.)

2. Rivera Cordero does not state the date on which she began receiving treatment. She does state that she returned from sick leave following the April, 1997 dismissal of her first Complaint. (Amended Complaint, ¶ 25.)

the person who allegedly discriminated against her. (*Id.*)

On December 5, 1995, Rivera Cordero filed suit in federal district court. *See Teresa Rivera Cordero v. Rafael Cordero–Santiago, et al.,* Civ. No. 95–2466(DRD). On April 30, 1997, the Court dismissed the case without prejudice. (*Id.,* ¶ 24.)

Sometime after May, 1997, Rivera Cordero returned from sick leave to her Tourism Office position. (*Id.,* ¶ 25.) Despite her repeated complaints, the situation remained unchanged—she continued to receive harassing and discriminatory remarks, she lacked specific duties or an adequate workspace, and she was reprimanded for trying to spend her time on productive tasks. (*Id.,* ¶ 25–26.) The situation became so intolerable that Rivera Cordero eventually felt she had no option but to resign. She did so on October 30, 1997. (*Id.,* ¶ 30.)

On August 13, 1998, Rivera Cordero filed a second charge before the ADU. (Docket No. 17, Exh. C.) The second charge was virtually identical to the first; the only meaningful difference between the two was the allegation that the harassment and discrimination forced her to resign on October 30, 1997.[3] The ADU transferred the charge to the EEOC sometime thereafter. On November 20, 1998, the EEOC dismissed the charge, noting that Rivera Cordero had not been working with the "alleged harassers" since 1994, and that she had not had "any type of working or social relationship" with the alleged harassers for more than 300 days. Accordingly, the EEOC concluded that Rivera Cordero's allegations were time-barred. (Docket No. 17, Exh. D.)

On February 19, 1999, Rivera Cordero filed this action.

## DISCUSSION

### I. Motion to Dismiss Standard

Pursuant to Fed.R.Civ.P. Rule 12(b)(6), a Complaint may not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle her to relief. *See, e.g., Brown v. Hot, Sexy, and Safer Prods., Inc.,* 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *See, e.g., Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996).

When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.,* 950 F.2d 13, 22 (1st Cir.1991). The plaintiff is responsible for putting her best foot forward in an effort to present a legal theory that will support her claim. *Id.* at 23 (*citing Correa–Martinez,* 903 F.2d at 52). The plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

### II. 42 U.S.C. § 1983 Claim

■ 42 U.S.C. § 1983 does not set forth a limitations period for claims brought pursuant to it. While federal law governs the date in which the cause of action accrues, federal courts borrow the limitations period and tolling doctrine from state law. *Carreras–Rosa v. Alves–Cruz,*

---

**3.** The second charge, like the first, limited Rivera Cordero's specific allegations to Jime-

nez–Monroig's actions. The last date mentioned prior to her 1997 dismissal was 1992.

127 F.3d 172, 174 (1st Cir.1997); *Muñiz-Cabrero v. Ruiz*, 23 F.3d 607, 610 (1st Cir.1994). Under Puerto Rico law, the applicable limitations period for personal injury actions—and, consequently, for Rivera Cordero's § 1983 claim—is one year. *See* P.R.Laws Ann. tit. 31, § 5298 (1990); *Carreras–Rosa*, 127 F.3d at 174.

 Under federal law, the one-year period begins to run when the aggrieved party "knows or has reason to know of the injury on which the action is based." *Carreras–Rosa*, 127 F.3d at 174; *Rivera–Muriente v. Agosto–Alicea*, 959 F.2d 349, 353 (1st Cir.1992). Rivera Cordero filed suit on December 5, 1995. The Court shall assume, for the purposes of this motion, that Rivera Cordero's first filing was timely, even though the Complaint's allegations suggest that she became aware of her injury before December 4, 1994. (*See, e.g.,* Amended Complaint at ¶¶ 11–15.) Assuming her first Complaint was timely, its filing tolled the statute of limitations.[4] *See, e.g., Andino–Pastrana v. Municipio De San Juan*, 215 F.3d 179, 180 (1st Cir.2000)(filing of action tolls limitations period under Puerto Rico law). After the Court dismissed her suit without prejudice on April 30, 1997, a new one-year period began to run.

Pursuant to the above, Rivera Cordero was required to bring her claims, at the latest, one year following dismissal, or by May 1, 1998. She did not do so. Accordingly, her claim is time-barred, and must be dismissed. The Court therefore need not reach the question whether the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or Title VII claims preempt § 1983 claims in this context.

## III. Title VII Claim

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.2000e *et seq.*, prohibits any employer, employment agency, or labor organization from engaging in unlawful employment practices based upon a person's race, color, religion, sex or national origin. Sexual harassment is a form of gender discrimination prohibited by Title VII. *Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 13 (1st Cir. 1998).

Under Title VII, a plaintiff must file an employment discrimination charge with the EEOC within 300 days of the alleged discrimination. *See* 42 U.S.C. 2000e–5(e)(1)(2000)(noting Title VII's charge-filing requirement); *see also Rivera–Rodriguez v. Frito Lay Snacks Caribbean, A Div. of Pepsico P.R., Inc.*, 265 F.3d 15, 21 (1st Cir.2001). A plaintiff generally cannot litigate claims based on conduct falling outside that period. *Rivera–Rodriguez*, 265 F.3d at 21.

A plaintiff must file a civil action under Title VII within 90 days of receiving a "Right To Sue" letter from the EEOC. *See* 42 U.S.C. § 2000e–5. This 90-day period is an exhaustion requirement rather than a jurisdictional one, and as such, is subject to equitable tolling. *Chico Velez v. Roche Prods., Inc.*, 971 F.Supp. 56, 58 (D.P.R. 1997), *aff'd* 139 F.3d 56 (1st Cir.1998).

 Moreover, the filing of a Complaint that is subsequently dismissed without prejudice—as Rivera Cordero's Complaint was—does not toll the 90-day statute of limitations. *See Chico–Velez*, 139 F.3d at 59 (citing cases); *Morales v. Instituto Comercial De Puerto Rico Junior Coll.*, 40

---

4. Rivera Cordero does not argue that the limitations period was equitably tolled, and would have not prevailed had she done so. The charges she filed before the ADU and the EEOC were not claims under § 1983 and therefore could not toll the limitations period for her § 1983 claim. *See Sifre v. Department of Health*, 38 F.Supp.2d 91, 96 (D.P.R.1999), *aff'd* 214 F.3d 23 (1st Cir.2000).

F.Supp.2d 62, 66 (D.P.R.1999). Dismissal of the original suit, even though labeled as without prejudice, "may sound the death knell for the plaintiff's underlying cause of action if the sheer passage of time precludes the prosecution of a new action." *Chico–Velez,* 139 F.3d at 59. That is the case here. The dismissal of the first Complaint left the situation "as if the suit had never been brought." *Morales,* 40 F.Supp.2d at 64. Since Rivera Cordero filed her 1999 Complaint well after the expiration of the 90–day limitations period (given the September 26, 1995 Right to Sue letter), her Title VII claim is time-barred, and must be dismissed.

The same result would obtain if the Court were to consider only her August, 1998 attempt to file charges before the EEOC and obtain a second Right to Sue letter. Her attempt is unavailing because she did not file those charges "within 300 days of the alleged discrimination." *Rivera–Rodriguez,* 265 F.3d at 21. Her seeking of legal assistance in March, 1994, her filing of charges before the ADU and EEOC in September, 1994, and her filing of her December, 1995 Complaint amply demonstrate that she was aware of her alleged injury well before August, 1998. Accordingly, her Title VII claim would be time-barred under that alternative scenario.

■ Since the Court has concluded that Rivera Cordero's Title VII claims fall outside the limitation periods provided under the statute, it will briefly examine whether her claims may be subject to equitable tolling. The First Circuit has repeatedly held, however, that it "hew[s] to a 'narrow view' of equitable exceptions to Title VII limitations periods." *Rys v. U.S. Postal Serv.,* 886 F.2d 443, 446 (1st Cir.1989). While Rivera Cordero's Complaint arguably makes passing reference to the "continuing violation" doctrine, her opposition to Ponce's motion to dismiss contains no

developed argumentation regarding the existence of a continuing violation. The Court shall not make these arguments for her. *See Cruz–Erazo v. Rivera–Montanez,* 212 F.3d 617, 622 n. 3 (1st Cir.2000)(stating that when a litigant has failed to raise a legal argument, "we think neither [the district nor the circuit] court is obliged to dream up and articulate [litigants'] arguments for them").

The continuing violation doctrine "is an equitable exception that allows an employee to seek damages for otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is 'some violation within the statute of limitations period that anchors the earlier claims.'" *O'Rourke v. City of Providence,* 235 F.3d 713, 730 (1st Cir.2001)(*quoting Provencher v. CVS Pharmacy,* 145 F.3d 5, 14 (1st Cir.1998)). Continuing violations can be serial or systemic. *See Pilgrim v. Trustees of Tufts Coll.,* 118 F.3d 864, 869 (1st Cir.1997). "A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitations period, a challenger may be deemed to have filed a timely complaint." *Provencher,* 145 F.3d at 14 (*quoting Sabree v. United Bd. of Carpenters and Joiners Local No. 33,* 921 F.2d 396, 400 n. 7 (1st Cir.1990)). A serial violation occurs where a chain of similar discriminatory acts emanating from the same discriminatory animus exists and where there has been some violation within the statute of limitations period that anchors the earlier claims. *Provencher,* 145 F.3d at 14 (*citing DeNovellis v. Shalala,* 124 F.3d 298, 307 (1st Cir.1997)).

Even where a plaintiff alleges a violation within the appropriate statute of limitations period, however, "the continuing violation claim will fail if the plaintiff was or should have been aware that he was being

unlawfully discriminated against while the earlier acts, now untimely, were taking place." *Landrau–Romero v. Banco Popular De Puerto Rico*, 212 F.3d 607, 612 (1st Cir.2000) (*citing Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir.1998)); *American Airlines, Inc. v. Cardoza–Rodriguez*, 133 F.3d 111, 124 (1st Cir.1998)(equitable tolling does not apply if an employee is actually or constructively aware of his or her Title VII rights). Such is the case here.[5] *Provencher*, 145 F.3d at 14. Rivera Cordero has failed to meet this critical notice standard.

Rivera Cordero's Amended Complaint shows that she was aware that she was being discriminated against while the "earlier acts, now untimely" took place. *Landrau–Romero*, 212 F.3d at 612. Given these facts, her continuing violation claim cannot stand. *Provencher*, 145 F.3d at 15. The Court concludes that the continuing violation doctrine—even assuming Rivera Cordero properly presented it—cannot be applied to save her Title VII claim.[6]

Lastly, Rivera Cordero appears to claim that the discriminatory conduct was caused, in part, by a desire to retaliate against her for filing her December, 1995 federal Complaint. Since she did not allude to the subject in her administrative complaint, she has forfeited any retaliation claim. *See Velazquez–Rivera v. Danzig*, 234 F.3d 790, 795 (1st Cir.2000).

---

**5.** A plaintiff has an obligation to file promptly or lose her claim, as distinguished from a plaintiff "who is unable to appreciate that he is being discriminated against until [she] has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern." *Provencher*, 145 F.3d at 15; *Sabree*, 921 F.2d at 401–02. This obligation for prompt filing seems even more applicable here, since the plaintiff previously filed a federal complaint premised on virtually identical facts.

## CONCLUSION

For the foregoing reasons, the Court grants Ponce's motion to dismiss the federal claims in Rivera Cordero's Complaint. The Court declines to exercise jurisdiction over the state claims, and dismisses them without prejudice. *See* 28 U.S.C. § 1367.

IT IS SO ORDERED.

---

**6.** Taking the facts of the Complaint as true, the only possible date that could fall within the 300–day limitations period is the date of her resignation, October 30, 1997. She filed her administrative complaint with the ADU on August 13, 1998, or 287 days after her resignation date. It is unlikely that the resignation itself could qualify as an "anchor" violation for purposes of equitable tolling, but, even if it did, Rivera Cordero's prior knowledge of the alleged discrimination prevents her from availing herself of the continuing violation exception.