**Victor LEBRON–RIOS, et al, Plaintiff(s),**

v.

**The U.S. MARSHAL SERVICE, et al, Defendant(s).**

**Civil No. 01–2716 (JAG).**

United States District Court, D. Puerto Rico.

April 24, 2002.

---

Benito Gutierrez–Diaz, Fajardo, PR, for plaintiffs.

Fidel A. Sevillano–Del–Rio, U.S Attorney's Office San Juan, PR, Victoria A. Ferrer–Kerber, San Juan, PR, Jose A. Oliveras–Gonzalez, Rio Piedras, PR, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.[1]

Plaintiffs Victor Lebrón–Ríos ("Lebrón–Ríos") and Bernice Aponte–Rodríguez ("Aponte–Rodríguez")(collectively "plaintiffs") filed suit for discrimination under Title VII, 42 U.S.C. § 2000e *et seq.;* 42 U.S.C. § 1981; 29 U.S.C. § 151 *et seq.,* the Taft–Hartley Act; 29 L.P.R.A. § 155, Puerto Rico Law 17; and 31 L.P.R.A. § 5141, Puerto Rico's general tort statute. The named defendants are: The U.S. Marshal Service; M.V.M., Inc. ("M.V.M."); Luis Torres ("Torres"), his wife, and their conjugal partnership; Luis Comas, his wife, and their conjugal partnership; Cesar Torres, his wife and their conjugal partnership; United Government Security Officers of America, Local 72 ("Local 72"); and, "X" Insurance Co.

On January 30, 2002, defendants M.V.M.; Torres, his wife, and their conjugal partnership; Luis Comas, his wife, and their conjugal partnership, filed an unopposed motion to dismiss, *inter alia,* for failure to exhaust administrative remedies. Upon review of the record, the Court grants the motion.

## FACTUAL BACKGROUND

M.V.M. is a corporation that provides court security services to the U.S. Marshal Service for the District of Puerto Rico, as well as other U.S. Marshal Service districts and law enforcement agencies in the United States and the Virgin Islands. (Docket 1, Complaint at 3). Plaintiffs worked for M.V.M. as Court Security Officers ("C.S.O.") with the U.S. Marshal Service for the District of Puerto Rico. (*Id.* at 2–3). Lebrón–Ríos began working as a C.S.O. around September 23, 1999, and Aponte–Rodríguez did so around April 25, 2001. (*Id.*)

Plaintiffs allege that defendants unlawfully harassed them "on account of social condition," deprived them of the equal protection of the laws, and retaliated against them. (*Id.* at 2). They also contend that Local 72, a union of M.V.M.'s employees to which plaintiffs belong, violated the Taft–

---

1. Britt E. Arrieta Rivera, a second year student at University of Puerto Rico Law School, assisted in the research and preparation of this opinion.

Hartley[2] Act by neglecting to represent plaintiffs in this action.[3] (*Id.* at 2, 4–5, 6).

The Complaint states that during Aponte–Rodríguez's tenure, defendant Torres, M.V.M.'s site supervisor in Puerto Rico, sexually harassed her. Torres allegedly hired Aponte–Rodríguez's because he was "very fun [sic] of her and wanted to go to bed with her." (*Id.* at 3). At one time, he ordered Aponte–Rodríguez to report to his office for a training that was not going to take place; he allegedly wanted just to sit near her. When Aponte–Rodríguez arrived, Torres invited her several times to have breakfast or lunch with him. (*Id.* at 7). Aponte–Rodríguez protested and walked out of his office. (*Id.* at 8) Another time, he commented on the color of her lipstick and hair as well as the beauty of her hairdo and make-up. (*Id.* at 7) On yet another occasion, he touched her neck and hair and commented on its softness. (*Id.* at 8)

Sometime after April 25, 2001, Aponte–Rodríguez and Lebrón–Ríos began a relationship. They eventually got married.[4] (*See Id.* at 3, 5, 8, 10, 12) When Torres became aware of the relationship, he became furious and tried to break the couple apart, telling Lebrón–Ríos that he wanted Aponte–Rodríguez to be his mistress. (*Id.* at 8). Torres openly told other employees he was going to make Lebrón–Ríos pay for interfering with his efforts to make Aponte–Rodríguez his mistress. (*Id.*)

Aponte–Rodríguez orally notified defendant Cesar Torres, M.V.M.'s service coordinator, about the sexual harassment incidents with Torres, to no avail. (*Id.* at 10). Plaintiffs informed M.V.M. and the U.S. Marshal Service of the situation, via fax and certified mail, again to no avail. (*Id.* at 4–5). M.V.M., for its part, began its own investigation. (*Id.* at 12). At some point thereafter, the employer-plaintiff does not specify whom-began retaliating against plaintiffs. (*Id.*).

Some time thereafter, Lebrón–Ríos's work post and work schedule were changed. (*Id.* at 8). Lebrón–Ríos requested a transfer to the Virgin Islands, but when Aponte–Rodríguez applied for a transfer to the same destination, his request was denied. (*Id.*) The pressure became so intense for Lebrón–Ríos that he had to be taken to a hospital after a high-blood pressure incident. (*Id.* at 9).

After leaving the hospital, Lebrón–Ríos and Aponte–Rodríguez stayed home for one day. (*Id.*) Although she had informed the lead C.S.O., Luis A. Comas ("Comas") of her impending absence, Aponte–Rodríguez was punished with one day off-duty. (*Id.*) That same day, she was called and ordered not to report back to work at M.V.M. (*Id.* at 12).

---

**2.** The plaintiffs refer to the statute as the "Taft–Hardly" Act. The Court assumes that they mean the Taft–Hartley Act, 29 U.S.C. § 151.

**3.** United Government Security Officers, Local 72 filed a Motion to Dismiss for Insufficiency of Process on January 28, 2002. (Dockets 6, 11). That motion was not opposed by plaintiffs. On March 25, 2002, the Court ordered plaintiff to show cause by March 28, 2002, why the motion should not be granted. (Docket 14).

Since plaintiff did not show cause, the Motion to Dismiss was granted on April 3, 2002. (Docket 16, 17). In light of the dismissal, the Court need not discuss the Taft–Hartley claim.

**4.** The Complaint does not specify when the plaintiffs became a couple or when they wed. The only fact specified is that they did not know each other before April 25, 2001, the date when Aponte–Rodríguez was hired. The Complaint does make reference to Aponte–Rodríguez as wife and Lebrón–Rodríguez as husband on pages 8, 10 and 12. Thus, the Court assumes that their relationship and eventual marriage took place while they were under M.V.M.'s employment.

Plaintiffs allege that Comas had been closely supervising their personal whereabouts "in and out of the premises of the employer's assigned duties." (*Id.* at 10.) When Lebrón–Ríos had to miss time off from work because of his medical condition, Comas sought—and obtained—a suspension order to prevent Lebrón–Ríos from returning to work, alleging that Lebrón–Ríos "was medically unfit for duty." (*Id.*) This suspension order, the plaintiffs contend, was "a blunt effort to separate him from his wife who was kept working in her regular schedule and supervised by the same people she has been complaining of sexual harassment." (*Id.*)

Plaintiffs allege that M.V.M.'s acts constitute a "constructive lay off." (*Id.*) Moreover, they contend that M.V.M.'s tolerance of overt acts of sexual discrimination and civil rights violations has caused them emotional distress and health problems. (*Id.* at 6, 12). They seek damages stemming from the allegedly illegal and discriminatory layoff, as well as back pay, costs, interests and legal fees. (*Id.* at 14).

Defendants M.V.M., Luis Torres, his wife Maria Cortes, Luis Comas, and his wife Cristina Pagán, filed a Motion to Dismiss or Summary Judgement[5], for failure to exhaust administrative remedies, failure to state a claim under 42 U.S.C. § 1981, and to dismiss the claims under Puerto Rico law because the federal courthouse is a federal enclave and is not subject to Puerto Rico laws. (Docket 7). To date, this motion stands unopposed.

## DISCUSSION

### I. *Motion to Dismiss*

Under Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled fac-

tual allegation as true and draws all reasonable inferences in plaintiff's favor. *Tompkins v. United Healthcare of New England, Inc.*, 203 F.3d 90, 93 (1st Cir. 2000); *Carparts Distribution Ctr., Inc. v. Automotive Wholesaler's Ass'n of New England Inc.*, 37 F.3d 12, 14 (1st Cir. 1994); *Roth v. United States*, 952 F.2d 611, 613 (1st Cir.1991); *Rivera Cordero v. Autonomous Municipality of Ponce*, 182 F.Supp.2d 221, 223 (D.P.R.2002). To survive a motion to dismiss the plaintiff must "set forth factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Tompkins*, 203 F.3d at 93. Even when all inferences must be made in plaintiffs' favor, the Court need not credit "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). The Complaint will be dismissed if under the facts alleged, the Court finds that the plaintiff will not "prevail on any possible theory." *Berezin v. Regency Sav. Bank*, 234 F.3d 68, 70 (1st Cir.2000); *Tompkins*, 203 F.3d at 93.

### II. *Failure to Exhaust Administrative Remedies*

Defendants contend that the Complaint should be dismissed because pursuant to Title VII, plaintiffs did not file an administrative charge before the EEOC prior to filing suit. (Docket 7 at 4). Defendants are correct. Title VII states:

> [A] charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment

5. In order for this motion to become a summary judgment one, defendants had to comply with Local Rule 311.12 regarding the filing of a separate Statement of Uncontested Material Facts with specific reference to the record. Since this statement has not been filed, the Court will consider this motion as a motion to dismiss.

practice occurred, ... [or if] the person aggrieved ... initially instituted proceedings with a State of local agency with authority to grant or seek relief from such practices ... such charges shall be filed by or on behalf or the person ... within three hundred days after the alleged unlawful employment practice occurred.

42 U.S.C. § 2000e–5(e)(1994). The reason for this requirement is to "provide defendants with 'prompt notice of claims and to create an opportunity for early conciliation'." *Siaca v. Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 160 F.Supp.2d 188, 195 (D.P.R.2001)(*citing Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996)).

The First Circuit has held that "a claimant who seeks to recover ... for an asserted violation of Title VII, first must exhaust administrative remedies by filing a charge with the EEOC, or alternatively, with an appropriate state or local agency, within the prescribed time limits." *Bonilla v. Muebles J.J. Alvarez*, 194 F.3d 275, 278 (1st Cir.1999). Moreover, "[t]his omission, if unexcused, bars the courthouse door, as courts long have recognized that Title VII's charge-filing requirement is a prerequisite to the commencement of a suit." *Id.*

■ To seek recovery for their Title VII claims, plaintiffs were required to file administrative charges prior to filing suit. They have failed to do so and they have not given any reason to justify their noncompliance. Accordingly, the Court dismisses the Complaint as to M.V.M., Inc., Luis Torres, his wife María Cortes, Luis Comas, and his wife Cristina Pagán. Since this order disposes of the federal claims, plaintiffs' supplemental claims under Puerto Rico law are dismissed as well. *See* 28 U.S.C. § 1367.

### III. *Failure to state a claim under 42 U.S.C. § 1981.*

■ Section 1981, which prohibits racial discrimination, states, in pertinent part, that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory ... and to the full and equal benefit of all and proceedings ... as is enjoyed by white citizens...." 42 U.S.C. § 1981. The Complaint contains no reference to an act of race discrimination by any of the defendants. Accordingly, plaintiffs' claims under § 1981 are dismissed.

### CONCLUSION

In light of the foregoing, the Court grants defendants's motion to dismiss as to M.V.M., Inc., Luis Torres, his wife María Cortes, Luis Comas, and his wife Cristina Pagán. Partial Judgment shall be entered.

IT IS SO ORDERED.